UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

PAUL MOORE,

Petitioner,

v.

J.L. JAMISON, Warden,

Respondent.

24 Civ. 2095 (DEH)

**OPINION AND ORDER**

DALE E. HO, United States District Judge:

On December 20, 2022, Petitioner Paul Moore ("Petitioner" or "Mr. Moore") was sentenced to a 92-month term of imprisonment for distribution of cocaine in violation of 21 U.S.C. §§ 841(a)(1), (b)(1), and possession of a firearm by a convicted felon in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(2).[1] On March 18, 2024, Mr. Moore, proceeding *pro se*, filed a Petition for Writ of Habeas Corpus ("Petition").[2] At the time of the filing, he was incarcerated at the Federal Correctional Institution in Otisville, New York ("FCI Otisville").[3] On August 8, 2024, Respondent filed an opposition to the Petition.[4] Petitioner did not file a reply, despite the Court issuing multiple extensions.[5] In all, Petitioner's deadline to reply was extended for approximately 6 months, and more than 18 months have passed since that deadline. The Court therefore treats the Petition as fully briefed.

---

[1] Decl. Kettisha Manson Walker ("Walker Decl.") ¶ 5, ECF No. 16.

[2] Pet., ECF No. 1.

[3] *Id.* at 1.

[4] Resp't Mem. L. Opp'n ("Opp'n"), ECF No. 15.

[5] *See* ECF Nos. 17 (setting initial Reply deadline of September 28, 2024), 18 (granting extension to October 18, 2024), 20 (*sua sponte* extending time to reply to December 20, 2024), 21 (*sua sponte* extending time to reply to March 21, 2025, and directing mailing to Petitioner's current address).

Mr. Moore argues that the Federal Bureau of Prisons ("BOP" or "Bureau") incorrectly calculated his January 27, 2023, security classification ("Initial Security Classification") and March 28, 2023, First Step Act ("FSA") recidivism risk assessment ("Initial Risk Assessment").[6] Petitioner argues that BOP improperly scored an incident of Petitioner absconding from parole, resulting in scores that were higher than warranted and that thereby (1) constrained Mr. Moore's liberty interest with respect to the Initial Security Classification, and (2) harmed Mr. Moore's ability to apply Earned Time Credits ("ETC") towards early release based on the Initial Risk Assessment.[7]

For the reasons stated herein, the Petition is **DENIED** for lack of federal habeas jurisdiction.

## BACKGROUND

### I. Security Classifications Pursuant to Program Statement 5100.08

The Bureau of Prisons assigns everyone in its custody a "security classification" that corresponds to "a level of supervision based on criminal history and institutional behavior."[8] The Bureau determines security classifications pursuant to Program Statement 5100.08 ("PS 5100.08").[9] Under this policy, BOP assigns points across numerous categories, including the "severity of the current offense," "criminal history score, history of escape or attempts, age,

[6] Pet. at 2-3.

[7] *Id.*

[8] *Gallicchio v. Pliler*, No. 22 Civ. 6643, 2025 WL 4679000, at *8 (S.D.N.Y. May 12, 2025), *report and recommendation adopted*, No. 22 Civ. 6643, 2026 WL 976544 (S.D.N.Y. Apr. 9, 2026).

[9] Fed. Bureau Prisons, *Inmate Security Designation and Custody Classification* (May 6, 2026), https://www.bop.gov/policy/progstat/5100_008_cn-3.pdf [https://perma.cc/5G8U-XCSN]; *see* Walker Decl. ¶ 6.

education level, and drug or alcohol abuse."[10] BOP converts the point total into "minimum," "low," "medium," "high," and "administrative" security classifications, as follows:[11]

| Security Classification | Point Total ("Males") |
|---|---|
| Minimum | 0-11 |
| Low | 12-15 |
| Medium | 16-23 |
| High | 24+ |
| Administrative | All total points |

The resulting security classifications are then used to assign individuals to BOP facilities with the requisite supervision infrastructure.[12]

## II. Recidivism Risk Assessments Under the First Step Act

BOP also assesses incarcerated individuals' risk of recidivism pursuant to the First Step Act.[13] To do this, BOP uses a rubric called "PATTERN" to assign points based on several factors and converts the total score into "minimum," "low," "medium," and "high" recidivism risk levels, as follows:[14]

| Recidivism Risk Level | Point Total ("Males") |
|---|---|
| Minimum | 5 or less |
| Low | 6-39 |
| Medium | 40-54 |
| High | 55 or more |

Assigned recidivism risk levels affect individuals' ability to earn and apply Earned Time Credits towards early prerelease custody or supervised release.[15] As to earning ETC, individuals

[10] *Rosales v. Petrucci*, No. 20 Civ. 2136, 2021 WL 5449701, at *2 n.4 (S.D.N.Y. Nov. 22, 2021).

[11] Opp'n at 7 (citing PS 5100.08, ch. 1, at 2).

[12] *See id.* at 6-7.

[13] 18 U.S.C. § 3632(a)(1).

[14] Opp'n at 11 (citing BOP, *Cut Points Used for Pattern v. 1.3*, https://www.bop.gov/inmates/fsa/docs/fsa_cut_points.pdf?v=1.3 [https://perma.cc/V2V2-JJ7S]); *see also* 18 U.S.C. § 3632(a)(1) (establishing risk level terms).

[15] *See* 18 U.S.C. § 3632(d)(4).

that BOP determines are at "minimum" or "low" risk may earn 50 percent more ETC above the baseline accrual rate.[16] As to applying ETC, in general, only individuals that BOP determines were at "minimum" or "low" risk in their last one or two assessments may apply ETC towards early release.[17] On the other hand, individuals that BOP determines are at "medium" or "high" risk may secure early prerelease custody only with the warden's approval.[18] Thus, an assessment of "medium" or "high" recidivism risk substantially impacts an individual's ability to be released from prison early.

## III. The History of Escape Factor

"History of Escape" is a factor in both security classification analyses and recidivism risk assessments. For both systems, History of Escape includes an "individual's entire background of escapes or attempts to escape from confinement, or absconding from community supervision, excluding the current term of confinement."[19] Only the most recent act of escape is considered for scoring.[20] Predetermined point amounts are assigned depending on whether the incident was "minor" or "serious" and how many years ago it occurred.[21] A "minor" incident is "[a]n escape from an open institution or program . . . not involving any actual or threat of violence . . . includ[ing] . . . Absconding from Community Supervision."[22] For security classifications, a "minor" history of escape act that occurred five to ten years ago scores two

[16] 18 U.S.C. § 3632(d)(4)(A)(ii).

[17] 18 U.S.C. §§ 3624(g)(1)(B), (D).

[18] 18 U.S.C. § 3624(g)(1)(D)(i)(II).

[19] PS 5100.08, ch. 4, at 10 (defining "History of Escape" for security classifications); *see also* Opp'n at 11 (stating that PATTERN assesses "History of Escape . . . based on the same considerations used in the Security Classification assessment").

[20] Walker Decl. ¶ 9.

[21] *See id.*

[22] PS 5100.08, ch. 4, at 11.

points.[23] For recidivism risk assessments, a "minor" act that occurred five to ten years ago scores six points.[24]

**IV. Petitioner's Assessments**

Respondent claims that Petitioner absconded from parole four times related to prior New York criminal convictions, on April 3, 2008; May 14, 2009; December 21, 2011; and August 21, 2013.[25] Petitioner does not appear to dispute that these incidents occurred.[26] Because BOP only scores the most recent escape incident, only the August 21, 2013, absconding is relevant here.[27]

BOP considered Mr. Moore's history of absconding from parole in its assessments. Petitioner's Initial Security Classification included two points for a "minor" escape incident occurring five to ten years ago, resulting in twenty-one total points.[28] This score, along with other factors, resulted in Petitioner's placement at a medium-risk facility, FCI Otisville.[29] The Initial Risk Assessment included six points for a "minor" escape incident occurring five to ten years ago, resulting in 55 total points.[30] This resulted in Petitioner receiving a "high" recidivism risk determination, making him unable to accrue 'bonus' ETC or apply ETC towards early release.[31]

---

[23] *Id.* at 10.

[24] Opp'n at 11 (citing BOP, *Male Pattern Risk Scoring*, https://www.bop.gov/inmates/fsa/docs/male_pattern_form.pdf?v=1.3 [https://perma.cc/4WE6-UL7G]).

[25] Walker Decl. ¶ 8.

[26] *See* Pet. at 2.

[27] *See* Walker Decl. ¶¶ 9, 12.

[28] ECF No. 16-2; Walker Decl. ¶ 7-8.

[29] Walker Decl. ¶ 10.

[30] ECF No. 16-3; *see* BOP, *Male Pattern Risk Scoring*.

[31] ECF No. 16-3; *see* 18 U.S.C. §§ 3632(d)(4)(A)(ii), 3624(g)(1)(B), (D).

Respondent does not contest that Petitioner exhausted his administrative remedies as to the Initial Security Classification and Initial Risk Assessment.[32]

BOP conducted several reassessments before Mr. Moore filed the Petition, including a security classification reassessment on January 8, 2024, and recidivism risk reassessments on September 10, 2023, and March 3, 2024.[33] Respondent argues that Petitioner did not exhaust his administrative remedies as to these reassessments.[34]

## LEGAL STANDARD

Habeas corpus relief under 28 U.S.C. § 2241 is available for people who are incarcerated in federal prison and who are "in custody in violation of the Constitution or laws or treaties of the United States."[35] A writ of habeas corpus under § 2241 is available for a petitioner to challenge the execution of his sentence after conviction, such as "the administration of parole, computation of a prisoner's sentence by prison officials, prison disciplinary actions, prison transfers, type of detention, and prison conditions."[36] The petitioner "bears the burden of proving that he is being held contrary to law; and because the habeas proceeding is civil in nature, the petitioner must satisfy his burden of proof by a preponderance of the evidence."[37]

[32] Opp'n at 5.

[33] *See* Walker Decl. ¶¶ 13-18; ECF Nos. 16-4, 16-5, 16-6.

[34] Opp'n at 5.

[35] 28 U.S.C. § 2241(c)(3).

[36] *Jiminian v. Nash*, 245 F.3d 144, 146 (2d Cir. 2001); *see also Carmona v. U.S. Bureau of Prisons*, 243 F.3d 629, 632 (2d Cir. 2001) (finding a challenge to loss of good time credits was properly brought via an application for a writ under § 2241); *Rosales*, 2021 WL 5449701, at *3 (discussing whether an inmate's challenge to an adverse recidivism risk assessment and loss of ETC was properly brought under § 2241).

[37] *Skaftouros v. United States*, 667 F.3d 144, 158 (2d Cir. 2011).

As Petitioner is a *pro se* and incarcerated litigant, the Court examines his submissions with "special solicitude,"[38] "and . . . interpret[s] them to raise the strongest arguments that they suggest."[39] However, "threadbare recitals" or "mere conclusory statements [] do not suffice," and courts "cannot invent factual allegations that [the petitioner] has not pled."[40]

**DISCUSSION**

Petitioner argues that BOP incorrectly considered his record of absconding from parole under the "History of Escape" variable when conducting his Initial Security Classification and Initial Risk Assessment.[41] Applying the "special solicitude" afforded to *pro se* litigants,[42] the Court construes the Petition as claiming that (1) the resulting "medium" security classification harmed Mr. Moore's liberty interest, and (2) the resulting "high" recidivism risk determination negatively affected his ability to apply Earned Time Credits towards early release.[43] Petitioner contends that the definition of History of Escape excludes "absconding," so he should not have received points under this category for his August 21, 2013, act of absconding from parole.[44] Petitioner points to PS 5100.08, which states that "[a]bsconding . . . should not be scored under the Escape History Item, even if clearly documented, but should be considered by a case-by-case basis under the Management Variable 'Greater Security.'"[45]

---

[38] *Tracy v. Freshwater*, 623 F.3d 90, 102 (2d Cir. 2010).

[39] *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994).

[40] *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010).

[41] Pet. at 2-3.

[42] *Tracy*, 623 F.3d at 102.

[43] *See* Pet. at 2.

[44] *Id.* at 2-3.

[45] Pet. Mem. L. Supp. at 5, ECF No. 2 (quoting PS 5100.08, ch. 4, at 10).

Respondent argues that the Petition should be denied because (1) "BOP retains full discretion regarding inmate classifications decisions," and (2) "even if Petitioner could assert a cognizable claim, his arguments that BOP should not have considered his history of absconding from parole are incorrect."[46]

## I. Liberty Interest

Petitioner's argument that the Initial Security Classification harmed his liberty interest must be dismissed. "Unless [Petitioner] can show 'that the challenged confinement imposes an atypical and significant hardship' or that the action by the BOP 'will inevitably affect the duration of his sentence,' [Petitioner] has no constitutionally protected liberty interest in his prisoner classification."[47] Even with a liberal reading, Petitioner makes no such showing.[48] Accordingly, absent any indication that Petitioner has a "protected interest in [his] classification that would invoke due process protections," he is not entitled to federal habeas relief for the Initial Security Classification.[49]

## II. Early Release

"[H]abeas corpus is an attack by a person in custody upon the legality of that custody."[50] Thus, when someone in custody "is challenging the . . . duration of his physical imprisonment, and the relief he seeks is a determination that he is entitled to . . . a speedier release from that

[46] Opp'n at 1.

[47] *Gallicchio*, 2025 WL 4679000, at *9.

[48] *See Ellison v. Christensen*, No. 23 Civ. 556, 2024 WL 342675, at *3 (N.D.N.Y. Jan. 30, 2024) ("[P]etitioner made no specific allegations that his classification score of 15 or his incarceration at a 'Medium' security facility resulted in significant hardship. Petitioner's single, conclusory allegation of a 'security' issue, without more, fails to demonstrate the 'atypical and significant hardship' required to give rise to a liberty interest in his prisoner classification or incarceration at a 'Low' security prison.").

[49] *Id.* (citing *Torres v. Stewart*, 263 F. Supp. 2d 463, 469 (D. Conn. 2003)).

[50] *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973).

imprisonment, his sole federal remedy is a writ of habeas corpus."[51] It follows that when a person is not challenging the length or validity of their detention, habeas corpus is not the proper remedy.[52] Thus, to determine whether the Court has jurisdiction to consider Mr. Moore's petition for habeas corpus relief, the Court must evaluate the relief he seeks.[53]

Here, Petitioner challenges the PATTERN score underlying his Initial Risk Assessment.[54] But even if BOP were to do as Mr. Moore requests and exclude the 2013 absconding incident from consideration under the History of Escape factor, Mr. Moore would still be unable to apply ETC towards early release. Using the PATTERN tool, BOP scored Mr. Moore's 2013 absconding act as a "minor" incident occurring five to ten years ago and accordingly assigned six points for History of Escape.[55] This contributed to a total score of 55 points, corresponding to "high" recidivism risk.[56] Were Petitioner correct that the History of Escape points should be removed, his total score would be 49 points, corresponding to "medium" recidivism risk.[57] However, that would not, as a practical matter, affect things, because "high" and "medium" risk levels are treated the same for purposes of earning and applying ETC towards early release.[58] Accordingly, even if

[51] *Id.* at 500.

[52] *Abdul-Hakeem v. Koehler*, 910 F.2d 66, 69 (2d Cir. 1990) ("[H]abeas is the required procedure only if the prisoner makes a constitutional challenge to the . . . duration of his physical imprisonment and seeks . . . a speedier release from that imprisonment.").

[53] *See Mouscardy v. Rickard*, No. 25 Civ. 4966, 2026 WL 1971125, at *2 (S.D.N.Y. July 8, 2026).

[54] Pet. at 2. Petitioner does not appear to challenge the subsequent reassessments. However, even if he did, the Court notes that Petitioner has not exhausted administrative remedies with respect to those subsequent assessments, and "although § 2241 does not expressly require exhaustion of administrative remedies, in this Circuit, exhaustion of administrative remedies is generally a prerequisite to *habeas corpus* relief under § 2241." *Lesane v. Tellez*, No. 21 Civ. 2074, 2021 WL 3500916, at *2 (S.D.N.Y. Aug. 4, 2021) (citing *Carmona*, 243 F.3d at 634).

[55] ECF No. 16-3; *see* BOP, *Male Pattern Risk Scoring*.

[56] ECF No. 16-3; Opp'n at 11 (citing BOP, *Cut Points Used for Pattern v. 1.3*).

[57] *See* Opp'n at 11 (citing BOP, *Cut Points Used for Pattern v. 1.3*).

[58] *See* 18 U.S.C. §§ 3632(d)(4)(A)(ii), 3624(g)(1)(B), (D).

Mr. Moore were correct, his claim would not "necessarily spell speedier release."[59] The Petition therefore does not "lie[] at the core of habeas corpus,"[60] and the Court lacks federal habeas jurisdiction.[61]

## CONCLUSION

For the foregoing reasons, Mr. Moore's Petition for a Writ of Habeas Corpus is **DENIED**. The Clerk of Court is respectfully requested to close this case.

SO ORDERED.

Dated: October 23, 2026
New York, New York

DALE E. HO
United States District Judge

[59] *Wilkinson v. Dotson*, 544 U.S. 74, 82 (2005).

[60] *Id.*

[61] *See Mouscardy*, 2026 WL 1971125, at *3.